UNITED STATS DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL PERUGINI, | : | Civil Case Number |
|     *Plaintiff,* | : | 3:18-cv-02095 (VLB) |
| | : | |
| v. | : | |
| | : | DATE: September 4, 2019 |
| THE CITY OF BRISTOL | : | |
| MARK KICHAR | : | |
| RODNEY GOTAWALA | : | |
| STEPHEN LESKO[1] | : | |
|     *Defendants.* | : | |

## MEMORANDUM OF DECISION GRANTING MOTION TO DISMISS [DKT. 29]

Plaintiff Michael Perugini ("Perugini") brings the instant action alleging claims against the City of Bristol ("Bristol"), Police Officers Mark Kichar ("Kichar") and Rodney Gotawala ("Gotawala"), and Assistant State's Attorney Stephen Lesko ("Lesko"). Perugini's claims arise out of his January 2017 arrest and subsequent prosecution. Perugini brings six claims against Lesko: 42 U.S.C. § 1983, malicious prosecution, double jeopardy prosecution, abuse of process, and conspiracy. [Dkt. 1, ¶¶27-66].

---

[1] The Complaint refers to the defendant as "Lasko", while the Motion to Dismiss refers to the defendant as "Lesko." The Court assumes the Motion to Dismiss's spelling of the defendant name is correct, and will refer to the defendant as "Lesko."

1

Lesko now moves to dismiss all claims against him under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. [Dkt. 29-1]. The Court finds that Lesko is entitled to prosecutorial immunity because his actions were within his authority as an appointed assistant state's attorney "designated by the Chief State's Attorney" to handle "all prosecutions… of housing matters deemed to be *criminal*." Conn. Gen. Stat. § 51-278(b)(1)(A) (emphasis added). Therefore, his motion to dismiss is GRANTED.

I. <u>Background</u>

All facts recited below are asserted in the Complaint. [Dkt. 1]. For the purpose of deciding Lesko's Motion to Dismiss, this Court "draw[s] all reasonable inferences in Plaintiff['s] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citations omitted).

In December of 2016, Perugini, a landlord, had a dispute with his tenants, and Bristol police officers Kichar and Gotawala became involved. [Dkt. 1 at ¶ 12-20]. On December 27, 2016, fearing he would be arrested, Perugini contacted the Connecticut State's Attorney's Office in Bristol, Geographical Area 17 ("G.A. 17").

[*Id.* at ¶ 21]. The G.A. 17 office informed Perugini that a warrant for his arrest had been submitted but denied. [*Id.*] A week later, on January 3, 2017, Perugini was arrested by three Bristol police officers, including Kichar. [*Id.* at ¶ 22]. Lesko, an assistant state's attorney for housing matters in New Britain, signed the arrest warrant. [*Id.* at ¶¶ 11, 23, 52].

On January 23, 2017 Perugini filed a discovery request for the arrest warrant application denied by the G.A. 17 prosecutor. [*Id.* at ¶ 23]. The next day, Lesko told Perugini that he did not have the G.A. 17 warrant application. [*Id.*]. Lesko wrote that Kichar had told Lesko that the warrant had been erroneously submitted to G.A. 17 rather than to the housing matters prosecutor, and that Kichar had not told Lesko that the warrant had been previously denied. [*Id.*] On March 9, 2017, following a renewed request by Perugini, Lesko provided Perugini with a copy of an arrest warrant. [*Id.*] Lesko also sent Perugini a Bristol Police Department memorandum stating that the warrant was inadvertently delivered to G.A. 17 and refused by a G.A. 17 prosecutor who cited prosecutorial discretion and deemed the incident a civil matter. [*Id.*] Lesko refused to provide Perugini with the arrest warrant review form for the denied warrant. [*Id.*]

Perugini subsequently obtained a copy of the arrest warrant review form from the Bristol Police Department. [*Id.* at ¶ 24]. The denied warrant was identical

to the warrant signed by Lesko. [*Id.*] The attached form indicated that the G.A. 17 prosecutor found no probable cause, believed the matter was civil, and ordered Kichar not to resubmit the warrant. [*Id.*] Perugini alleges that Kichar then lied to Lesko when he submitted the application for the arrest warrant. [*Id.*]

For nearly two years following Perugini's arrest, Lesko prosecuted Perugini in Connecticut Superior Court for criminal trespass, criminal lockout, and simple trespass. [*Id.* at ¶ 27]. During this period, Lesko attempted to coerce Perugini into accepting a plea agreement for the above charges but did not succeed. [*Id.* at ¶ 26]. Lesko filed a motion *in limine* to exclude evidence that the G.A. 17 prosecutor denied a warrant application identical to the one he granted. [*Id.* at 28]. The court never ruled on the motion. [*Id.* at ¶ 28]. On October 1, 2018 the court granted Perugini's motion to dismiss the charges on speedy trial grounds. [*Id.* at ¶ 29].

## II. Legal Standard for Motion to Dismiss[2]

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[2] Although Lesko's Motion to Dismiss is based on both 12(b)(1) and 12(b)(6) and provides legal standards for both, it does not include arguments involving lack of subject matter jurisdiction. Therefore, the Court does not address the 12(b)(1) basis.

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

"Pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants). The complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## Discussion

Construing Perugini's pro se complaint liberally, the Court finds that Perugini alleges the following claims against Lesko: conspiracy under § 1983; false arrest under § 1983; malicious prosecution under § 1983; double jeopardy prosecution under § 1983; and abuse of process under § 1983.[3] [Dkt. 1, ¶¶27-66]. Perugini sues Lesko in his individual capacity only, and he seeks monetary damages. [*Id.* at ¶¶ 3, 11].

*A. Prosecutorial Immunity*

Prosecutors receive absolute immunity from suit under § 1983 when they engage in "advocacy conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler,* 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). To determine if a prosecutor's actions meet this standard, the Second Circuit uses a "functional approach." *Id.* The functional test is an objective one. *Id.* Courts ask only "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Id.* at 166. If a reasonable prosecutor would, then absolute immunity applies to protect the

---

[3] Although the Complaint separates the 42 U.S.C. § 1983 claim and the other claims against Lesko, Dkt. 1 ¶¶ 27-64, the Complaint describes itself as civil rights action against a prosecutor in his individual capacity. Dkt.1 ¶¶ 1, 11. Therefore, the Court construes the claims against Lesko as raised pursuant to 42 U.S.C. § 1983.

prosecutor even if the complaint alleges that the prosecutor has "a malicious or corrupt intent behind the acts." *Id.* A prosecutor receives absolute immunity when she initiates and pursues a criminal prosecution or engages in any activities that are in preparation for the initiation of judicial proceedings or for trial. *Shmueli v. City of New York,* 424 F.3d 231, 236-37 (2d Cir. 2005).

However, a prosecutor is not absolutely immune solely because she engaged in the conduct at issue during her work. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993). "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* (quoted in *Simon v. City of New York*, 727 F.2d 167, 172 (2d Cir. 2013).

Moreover, a prosecutor is not protected when she "acts without any colorable claim of authority…" and thus "proceeds in the clear absence of all jurisdiction." *Shmueli*, F.3d at 237. The bar for showing a "clear absence of all jurisdiction" is high. In *Shmueli,* the court held that, because the allegations against the plaintiff constituted a criminal offense under New York law, the prosecutors had authority and thus were protected by absolute immunity—in the face of the plaintiff's claim that the prosecutors knew the allegations against the

7

plaintiff were false when they made them. *Id.* at 238-39. A prosecutor is still protected even if she makes false statements during judicial proceedings, *see Burns v. Reed,* 500 U.S. 478, 490 (1991), knowingly uses false testimony, *Shmueli,* 424 F.3d at 237, deliberately withholds exculpatory evidence, *id.,* engages in malicious prosecution, *id.* at 238, or attempts to intimidate an individual into accepting a guilty plea, *Peay v. Ajello,* 470 F.3d 65, 67-68 (2d Cir. 2006).

### B. Lesko's Authority

#### i. Lesko's authority to prosecute criminal charges

Perugini argues that Lesko, as an assistant state's attorney assigned to handle housing matters, did not have the authority to prosecute Perugini for criminal trespass, criminal lockout, and simple trespass, because these charges were completely unrelated to a violation of a state or municipal housing or health law, code or ordinance. [Dkt. 37 at 4-7]. The Court disagrees. Lesko's prosecution of Perugini, his attempt to coerce Perugini into accepting a plea agreement, and his filing of motions in court all fall within his function as an advocate.

The Division of Criminal Justice is responsible for "the investigation and prosecution of all criminal matters in the Superior Court" and exercises "all duties and powers with respect to the investigation and prosecution of criminal matters." Conn. Gen. Stat. § 51-276, 51-277(a). All assistant state's attorneys,

including assistant state's attorneys assigned to housing matters, are members of the Division of Criminal Justice. The Criminal Justice Committee appoints all assistant state's attorneys. Conn. Gen. Stat. § 51-278(b)(1)(A). Chapter 886, titled "Division of Criminal Justice," governs the powers and duties of assistant state's attorneys. Pursuant to Connecticut General Statute § 51-286a(a):

> Each… assistant state's attorney… shall diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court or in which the court may proceed, whether committed before or after his appointment to office.

*See also* Conn. Gen. Stat. § 51-278(b)(1)(A) ("Assistant state's attorneys… shall assist the state's attorneys for the judicial districts… in all criminal matters and… at [a state's attorney's] request, shall have and exercise all the powers and perform all the duties of state's attorneys."). Therefore, Lesko, as an assistant state's attorney, had authority to prosecute "all crimes and other criminal matters," including criminal trespass, criminal lockout, and simple trespass. *Id.*

It is true that, as an assistant state's attorney assigned to handle housing matters, Lesko had *additional* authority "to initiate prosecutions for violations of any state or municipal housing or health law, code, or ordinance." Conn. Gen. Stat. § 51-286b. Being assigned to handle housing matters neither changes an assistant state's attorney's status nor diminishes his or her authority to prosecute criminal matters. In fact, assistant state's attorneys assigned to

9

housing matters are specifically "designated by the Chief State's Attorney" to handle "all prosecutions… of housing matters deemed to be *criminal*." Conn. Gen. Stat. § 51-278(b)(1)(A) (emphasis added). That is, while the assistant state's attorneys assigned to housing focus on disputes related to housing, they are *criminal* prosecutors, and are not limited to appearing in housing court or other civil matters.

Moreover, the statute mandates that, assistant state's attorneys so designated, "to the extent practicable, shall handle housing matters on a full-time basis." *Id.* In recognizing that it may not be "practicable" for housing prosecutors to handle housing matters "full-time," the statute underscores that assistant state's attorneys assigned to housing matters retain their authority to handle other matters. *Id.* Accordingly, Lesko retained his criminal prosecutorial authority, and absolute immunity covers his prosecution of Perugini for the above charges, his attempt to coerce Perugini into accepting a plea agreement, and his filing of motions in court.

    ii.    Lesko's authority to sign an arrest warrant

The only remaining issue is whether Lesko had authority to sign the warrant for Perugini's arrest. Assistant state's attorneys exercise the powers and duties conferred upon them by Chapter 886 of the Connecticut General Statutes,

as well as those conferred upon them by other Connecticut "common and statutory law." Conn. Gen. Stat. § 51-277(a) (emphasis added).

Connecticut statutory and common law establishes that assistant state's attorneys have the authority to sign arrest warrants. As a "prosecutorial official," an assistant state's attorney is a "prosecuting authority," such that, upon his or her application, a judge may issue an arrest warrant. Conn. Gen. Stat. Ann. § 51-286a (titled "Duties and powers of prosecutorial officials," describing duties and powers of "[e]ach… assistant state's attorney"); Conn. Practice Book Sec. 36-1. Connecticut courts have upheld this statutory authority. *State v. Cicarella*, No. CR160169149, 2019 Conn. Super. LEXIS 46, at \*6-7 (Super. Ct. Jan. 10, 2019) (holding an arrest warrant signed by an assistant state's attorney is valid); *see also State v. Ali*, 660 A.2d 337, 341 (Conn. 1995) (validity of warrant signed by assistant state's attorney could be attacked on timeliness grounds but was not otherwise questioned).

Further, an assistant state's attorney in Connecticut has absolute immunity for her conduct as it pertains to her decision to sign an arrest warrant. *Figueroa v. Town of N. Haven*, No. 3:17-CV-00650 (SRU), 2017 WL 6045421, at \*2 (D. Conn. Dec. 6, 2017); *see also Turner v. Boyle*, 116 F. Supp. 3d 58, 80 (D. Conn. 2015) ("Absolute immunity also requires the dismissal of Plaintiffs' claims regarding a

State's Attorney seeking an arrest warrant [because] 'absolute immunity attaches to a prosecutor's decision to bring an indictment, whether he has probable cause or not.'") (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993)); *Damato v. Thomas*, No. HHDCV095030385, 2010 Conn. Super. LEXIS 1476, at *27 (Super. Ct. June 2, 2010) (citing *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997)) (state's attorney).

It is true that, pursuant to Connecticut General Statute § 51-277 (d)(1), "the Chief State's Attorney and each deputy chief state's attorney may sign any warrants, informations, applications for grand jury investigations and applications for extradition." This provision, however, does not imply that other state's attorneys lack the authority to sign warrants; rather, it extends to the administrative Chief State's Attorney and his or her deputies the powers that state's attorneys already have. *See* Conn. Gen. Stat. § 51-278(a)(1) ("[T]he Criminal Justice Commission shall appoint an administrative head of the Division of Criminal Justice whose title shall be Chief State's Attorney."); Conn. Gen. Stat. § 51-277(d)(2)-(3) (providing that the Chief State's Attorney may represent the state in court only with the "prior consent" of the state's attorney for that district and may only take the place of a state's attorney if there exists "clear and convincing evidence" of "misconduct, conflict of interest or malfeasance" by the

state's attorney). Therefore, the Court finds Lesko has absolute immunity for signing arrests warrants, including for signing Perugini's arrest warrant.

Accordingly, the Court finds Lesko is entitled to absolute immunity for all conduct asserted in Perugini's Complaint.[4]

---

[4] **In his opposition to Lesko's motion to dismiss, Perugini clarifies that**
> [T]he sole issue in this case is whether Defendant Lesko…. was imbued with the statutory authority to sign two criminal warrants for Plaintiff's arrest.… *Plaintiff does concede his complaint and request for relief is premised, not on the basis that Defendant Lesko violated his civil rights during the course of a legitimate prosecutor exercising his duties, but rather that the unlawful arrest and prosecution was solely a result of his lack of statutory authority to conduct the aforesaid actions….*

[Dkt. 35 at 1-2] (emphasis added). As explained, the Court does not believe that Perugini's construction of the statutes is correct. Even if Perugini's construction of the statutes were correct, however, to the extent that Perugini's allegations are premised on the claim that Lesko violated Perugini's statutory right to be arrested and prosecuted by an authorized prosecutor, Lesko would be protected by qualified immunity:
> Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citations omitted). Given the statutes discussed, a reasonable official in Lesko's position would have believed he had the statutory authority to prosecute Perugini. This is especially true given that, under the facts as alleged, Lesko was unaware at the time he signed the warrant application that an earlier application had been made and denied.

## Conclusion

For the foregoing reasons, the Court GRANTS Lesko's Motion to Dismiss. Perugini's claims against Lesko, including his § 1983 false arrest claim, § 1983 conspiracy claim, § 1983 malicious prosecution, § 1983 double jeopardy prosecution claim, § 1983 abuse of process claim, are DISMISSED.

IT IS SO ORDERED.

/s/

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 4, 2019